# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

Case No. 09-32775

JULIE M. WILSON
f/k/a JULIE M. FREDENBERG

        Debtor

MICHAEL H. FITZPATRICK, TRUSTEE

        Plaintiff and Counter-Defendant

        v.        Adv. Proc. No. 09-3162

GORDON D. FREDENBERG
MARY L. FREDENBERG
TED A. FREDENBERG

        Defendants and Counter-Plaintiffs

## M E M O R A N D U M

**APPEARANCES:**    JENKINS & JENKINS ATTYS., PLLC
        Ryan E. Jarrard, Esq.
        2121 First Tennessee Plaza
        800 South Gay Street
        Knoxville, Tennessee 37929
        Attorneys for the Plaintiff and Counter-Defendant

        TED H. LOWE, ESQ.
        3814 Powers Street
        Knoxville, Tennessee 37917
        Attorney for the Defendants and Counter-Plaintiffs

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff, Michael H. Fitzpatrick, Chapter 7 Trustee, on August 25, 2009, seeking to avoid, pursuant to 11 U.S.C. § 544(a)(1) and (a)(3) (2006), a lien[1] in the amount of $78,645.26 claimed by the Defendants, Gordon Fredenberg and Mary L. Fredenberg, in the estate's interest in certain real property, and, pursuant to 11 U.S.C. § 363(f) and (h), to sell the interests of the Debtor and the Defendant, Ted A. Fredenberg, in the real property. On September 9, 2009, the Defendants filed their Answer & Counterclaim, denying that the Plaintiff was entitled to the relief and requesting that the court prohibit him from selling the real property so that his interest will be adequately protected under 11 U.S.C. § 363(e) (2006). The Plaintiff filed his Answer to Counterclaim on September 23, 2009, denying that the Defendants should be afforded the relief requested. The court held a scheduling conference on October 29, 2009, at which time the parties agreed that a trial was not necessary, and that all issues could be resolved on stipulations and briefs.

The record before the court consists of Stipulations filed by the parties on November 12, 2009, including four exhibits stipulated into evidence, a Security Note (STIP. EX. 1), Marital Dissolution Agreement and Final Decree (Coll. Stip. Ex. 2), Warranty Deed (STIP. EX. 3), and Affidavit of Ted A. Fredenberg and Affidavit of Gordon Fredenberg (COLL. STIP. EX. 4). The Plaintiff filed his Brief on December 3, 2009, and the Brief in Support of Defendants' Request for Adequate Protection Under 11 U.S.C. 363(E) [sic] was filed by the Defendants on December 18,

---

[1] *See infra* n. 4.

2

2009.[2] Additionally, the court takes judicial notice of certain undisputed material facts of record in the Debtor's case file pursuant to Rule 201 of the Federal Rules of Evidence.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (H), and (O) (2006).

**I**

On October 19, 2002, the Debtor and the Defendant, Ted A. Fredenberg, her husband at that time, borrowed $53,888.27 from the Defendants, Gordon D. and Mary L. Fredenberg, and executed a handwritten Security Note as evidence of the loan. STIP. EX. 1. The purpose of the loan was to pay off an indebtedness on the marital residence jointly owned by the Debtor and Ted A. Fredenberg at 8017 Lett Road, Corryton, Tennessee (Residence).[3] STIP. EX. 1. Under the terms of the Security Note, principal and interest payments of $392.51 were due on the first day of each month to Gordon and Mary Fredenberg. STIP. EX. 1. In exchange, Gordon and Mary Fredenberg paid off the mortgage on the Residence but did not secure the $53,888.27 loan by filing or recording a lien on the Residence with the Register of Deeds for Knox County. STIPS. at ¶ 4.

On October 2, 2008, the Debtor and Ted Fredenberg were divorced pursuant to the provisions of a Final Decree entered in the Chancery Court for Knox County, Tennessee, which incorporated into its terms a Marital Dissolution Agreement executed by the parties on October 1, 2008. STIPS.

---

[2] The court is aware of the death of the Defendants' attorney on December 27, 2009. Because the record is complete, the court will proceed to resolve this adversary proceeding in the manner agreed upon by the parties.

[3] The Residence was purchased by the Debtor and Ted Fredenberg pursuant to a Warranty Deed dated August 31, 1998, and recorded with the Knox County Register of Deeds on September 1, 1998. STIP. EX. 3.

at ¶ 5; COLL. STIP. EX. 2. With regard to the Residence, the Marital Dissolution Agreement contains the following provision, which is incorporated verbatim into the Final Decree:

> **Real Estate:** The marital residence at 8017 Lett Road, Corryton, TN, 37721, will be sold and the proceeds placed in an escrow account at either attorney's office. After the sale costs have been paid, $53,888.27 plus 7% (Seven Percent) simple interest per year commencing October 19, 2002, until the date of sale, shall be paid to Gordon Fredenberg and wife in exchange for a novation and release of Wife by Gordon Fredenberg and his wife of any claims against Wife. The novation and release shall be effective upon entry of a final decree; otherwise it is void. Any remaining proceeds shall be split equally by the parties.

COLL. STIP. EX. 2. To date, the Residence has not been sold and at the time the Debtor commenced her bankruptcy case, she and Ted A. Fredenberg each owned an undivided one-half interest in the Residence as tenants in common. STIPS. at ¶ 6; T. FREDENBERG AFF. at ¶ 2. Following the divorce, Ted Fredenberg and his father, Gordon Fredenberg, have maintained the Residence by payment of utilities and insurance and providing upkeep of the lawn. T. FREDENBERG AFF. at ¶¶ 3-4. Neither the Marital Dissolution Agreement nor the Final Decree has been recorded with the Knox County Register of Deeds. STIPS. at ¶ 7.

On May 18, 2009, the Debtor filed the Voluntary Petition commencing her Chapter 7 bankruptcy case, and the Plaintiff was appointed trustee. On June 24, 2009, a Notice of Need to File Proof of Claim Due to Recovery or Anticipated Recovery of Assets was filed in the Debtor's case, and on August 4, 2009, Gordon and Mary Fredenberg filed a claim in the amount of $78,645.26. Appended to the Proof of Claim are copies of the Security Note, Marital Dissolution Agreement, and Final Decree.[4] Subsequently, on August 25, 2009, the Plaintiff filed the Complaint initiating this

---

[4] Notwithstanding that the Defendants, Gordon and Mary Fredenberg, filed their claim as unsecured, the Plaintiff treats it as though these Defendants are asserting a lien on the Residence. Because they claim in their Answer

(continued...)

adversary proceeding, averring that because there was no evidence of Gordon and Mary Fredenberg having recorded a lien against the Residence, their "claimed lien" should be avoided, and the Plaintiff should be allowed to sell both the Debtor's and Ted Fredenberg's interests in the Residence for the benefit of the Debtor's bankruptcy estate.

The Defendants filed their Answer & Counterclaim on September 9, 2009, averring that they have a lien on the Residence vis-a-vis the Final Decree of record in the Knox County Chancery Court[5] and arguing that if the Plaintiff were allowed to sell his interests in the Residence, Ted Fredenberg would be permanently deprived of the right to bargain for an appropriate sales price and to use the net proceeds to pay off the Security Note. For their Counterclaim, the Defendants request that the court prohibit the sale in order to adequately protect Ted Fredenberg's interest in the Residence or, in the alternative, request that the court condition the sale as is necessary to provide him with adequate protection of all the Defendants' interests. The Plaintiff filed his Answer to the Counterclaim on September 23, 2009, denying that Gordon and Mary Fredenberg possess any legally recognized interest in the Residence under either federal or Tennessee law.

The issues to be decided by the court, as defined by the Pretrial Order prepared by the parties and entered on November 2, 2009, are as follows:

1) whether the Plaintiff is entitled to avoid Gordon and Mary L. Fredenberg's "claim" in the amount of $76,645.26 against the Residence, pursuant to 11 U.S.C. § 544(a)(1) and (a)(3);

---

[4](...continued)
& Counterclaim filed on September 9, 2009, to have a lien on the Residence pursuant to the terms of the Final Decree, the court will resolve the lien avoidance issue.

[5] *See supra* n. 4.

5

 2)  whether the Plaintiff, pursuant to 11 U.S.C. § 363(f) and (h), is entitled to sell for the benefit of the estate, the interests in the Residence held by both the Debtor and Ted Fredenberg;

 3)  if a court-ordered sale occurs, whether the Defendants are entitled to protection under 11 U.S.C. § 363(e); and

 4)  whether the Plaintiff occupies the status of a bona fide purchaser.

## II

 Upon the filing of her Voluntary Petition and pursuant to 11 U.S.C. § 541(a) (2006), the Debtor's bankruptcy estate, consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case[,]" was created, and the Plaintiff, as Chapter 7 Trustee, became the representative thereof, succeeding to all of the Debtor's interests in property of the estate and inheriting the responsibility to use estate property for the best interests of creditors, including the sale of property if necessary.  11 U.S.C. §§ 323(a), 704(1) (2006).

 In aid of the exercise of his statutory duties, the Plaintiff is afforded certain "strong arm powers" under § 544 of the Bankruptcy Code, which provides, in material part, that a Chapter 7 trustee may, "as of the commencement of the case, and without regard to any knowledge of the trustee," avoid any obligations of a debtor which may be avoided by a judicial lien creditor, a creditor with a returned, unsatisfied execution, or a bona fide purchaser.  11 U.S.C. § 544(a) (2006).  In summary, "[t]he status which [§ 544(a)] confers upon the trustee in bankruptcy is that of 'the ideal creditor, irreproachable and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired a lien by legal or

equitable proceedings.'" *Lancaster v. Hurst (In re Hurst)*, 27 B.R. 740, 742 (Bankr. E.D. Tenn. 1983) (quoting *In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D. Miss. 1932)); *see also Gregory v. Ocwen Fed. Bank (In re Biggs)*, 377 F.3d 515, 517 (6th Cir. 2004) ("More simply, the trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case, then determines whether it is subject to any valid prior interests.").

Although the authority acquired by the Plaintiff is vested through federal bankruptcy law, his powers are determined under applicable state law. *See Waldschmidt v. Dennis (In re Muller)*, 185 B.R. 552, 554 (Bankr. M.D. Tenn. 1995). In Tennessee, mortgages and deeds of trust, marital dissolution agreements, and final divorce decrees are among those documents eligible by statute for recording. TENN. CODE ANN. § 66-24-101(a)(8), (10), (19) (2009). Nevertheless, unregistered documents are not the equivalent of registered deeds and are "therefore ineffectual as against creditors." *Mostoller v. Kelley (In re Kelley)*, 304 B.R. 331, 336-37 (Bankr. E.D. Tenn. 2003) (quoting *White v. O'Bryan*, 251 S.W. 785, 792 (Tenn. 1922)). Likewise, "a divorce decree must be registered to be effective as a conveyance of real property against creditors and bona fide purchasers of the property." *Edmondson v. Frasier (In re Frasier)*, 47 B.R. 864, 865 (Bankr. M.D. Tenn. 1985).

The Defendants contend that the Plaintiff did not obtain the status of bona fide purchaser because he had constructive notice of their interests in the Residence; however, their primary argument and assertion that Ted Fredenberg's possession of the Residence put the Plaintiff on constructive notice of his interest in the Residence, misstates the actual issue. The Plaintiff does not dispute that Ted Fredenberg has both an ownership and a possessory interest in the Residence and, in fact, acknowledges his interest and seeks to sell that interest, along with the Debtor's, for the

7

benefit of the estate. The real issue here is whether the Plaintiff had constructive or inquiry knowledge of Gordon and Mary Fredenberg's claimed interest in the Residence, to which the answer is no.

"Under Tennessee law, 'whatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and in good faith[,]'" *In re Bushee*, 319 B.R. 542, 546 (Bankr. E.D. Tenn. 2004) (quoting *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950)), and the Tennessee Supreme Court has held that "[a] legally registered deed of trust [or other document] places subsequent creditors and purchasers on constructive notice." *Limor v. Fleet Mortgage Group (In re Marsh)*, 12 S.W.3d 449, 454 (Tenn. 2000). Accordingly, "[r]egistration is imperative because, although it continues to be effective between the parties thereto, *see* TENN. CODE ANN. § 66-26-101 (2004), an unrecorded deed of trust 'shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice.'" *Mostoller v. Equity One, Inc. (In re Hickman)*, 367 B.R. 620, 622 (Bankr. E.D. Tenn. 2007) (quoting TENN. CODE ANN. § 66-26-103 (2004 & Supp. 2006)). As summarized by the Tennessee Supreme Court,

> Notice is generally said to take two forms, actual or constructive. Constructive notice is notice implied or imputed by operation of law and arises as a result of the legal act of recording an instrument under a statute by which recordation has the effect of constructive notice. "It has been well said that 'constructive notice is the law's substitute for actual notice, intended to protect innocent persons who are about to engage in lawful transactions . . . .'" Nevertheless, "[a]ctual notice must be given in the absence of a statute providing some means for constructive notice." Constructive notice encourages diligence in protecting one's rights and prevents fraud. If either no statute requires recordation to create constructive notice or a recordable instrument has not been properly recorded, then actual notice is required to estop a person.

> While "[i]t is true that recordation creates constructive notice as distinguished from actual notice, in that ordinarily actual notice is when one sees with his eyes that something is done," another kind of notice occupying what amounts to a middle ground between constructive notice and actual notice is recognized as inquiry notice. Some authorities classify inquiry notice as a type of constructive notice, but in Tennessee, it has come to be considered as a variant of actual notice. "The words 'actual notice' do not always mean in law what in metaphysical strictness they import; they more often mean knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." Even a good faith failure to undertake the inquiry is no defense. Thus, "[w]hatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and good faith."

*Blevins v. Johnson County*, 746 S.W.2d 678, 682-83 (Tenn. 1988) (internal citations omitted).

The Defendants aver that because of the high divorce rate in this country and the fact that the Final Decree referencing their claim against the Residence was on file with the Knox County Chancery Court, the Plaintiff was on inquiry notice as to its existence and under an obligation to research divorce records. Such an obligation, however, is not required and, in fact, extends far beyond the scope of what Tennessee law requires. The relevant fact here is that neither the Security Note, the Marital Dissolution Agreement, nor the Final Decree were recorded with the Knox County Register of Deeds, and under Tennessee's recording statutes and the case law applying them, the rights of a judicial lien creditor or a bona fide purchaser – and thus, the Plaintiff Chapter 7 Trustee – intervene and take priority over the claim of Gordon and Mary Fredenberg. Accordingly, to the extent Gordon and Mary Fredenberg contend their $78,645.26 claim constitutes a lien on the estate's one-half undivided interest in the Residence, the Plaintiff is entitled to avoid that lien. Nevertheless, although they do not possess a claim or other interest superior to the bankruptcy estate's one-half interest in the Residence, Gordon and Mary Fredenberg retain their unsecured claim for the balance

9

owing on the Security Note. Assuming the availability of funds, their claim shall be paid in accordance with the distribution scheme mandated by 11 U.S.C. § 726 (2006).

### III

The next issue to be addressed is whether the Plaintiff may sell the interests of both the Debtor and Ted Fredenberg in the Residence. The authority to sell property of the estate is granted by 11 U.S.C. § 363 (2006), which provides, in material part:

> (f)  The trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if—
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > . . . .
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
>
> . . . .
>
> (h)  Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as tenant in common, joint tenant, or tenant by the entirety, only if—
>
> > (1) partition in kind of such property among the estate and such co-owners is impracticable;
> >
> > (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> >
> > (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(f), (h). It is undisputed that Ted Fredenberg possesses an interest as a tenant in common in the Residence and that the inquiry turns solely upon application of subsection (h) and whether each requirement is satisfied. The Plaintiff bears the burden of showing that the estate will benefit from the sale of the property, and once that burden is met, it shifts to the Defendant to prove that he will suffer a detriment outweighing the benefit to the estate. *Gazes v. Roswick (In re Roswick)*, 231 B.R. 843, 847 (Bankr. S.D.N.Y. 1999).

In his Brief, the Plaintiff argues that because the Residence is a single-family dwelling, partition would be impracticable and any attempt at partition would realize significantly less than would a sale of the Residence as a whole, relying on the court's holding in *Kelley* that, based in part upon Tennessee Code Annotated § 29-27-116 (2001) defining partition, the court agreed that "[w]here property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds." *Mostoller v. Kelley (In re Kelley)*, 304 B.R. 331, 338 (Bankr. E.D. Tenn. 2003) (quoting *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 935 (Bankr. S.D. Fla. 1991)). Although the Plaintiff has not presented the court with any evidentiary proof concerning the value of the property, the court can easily deduce not only that the Plaintiff would realize a higher sale price for the entire Residence than he would for the Debtor's undivided one-half interest, but that partition is not practical and, in fact, is contrary to the intentions of the Debtor and Ted Fredenberg as evidenced by the Marital Dissolution Agreement and Final Decree. Likewise, it is

somewhat axiomatic that, because the Residence is residential, it is not used for the production, transportation, distribution, or sale of gas or electric energy.

With respect to whether the estate will receive a benefit by a sale of the Residence, the case law is clear that when the sale of property with substantial equity "would result in the payment of some dividend to unsecured creditors, . . . [it] undoubtedly would constitute a benefit to the estate, especially when the property is the sole asset of the bankruptcy estate." *Kelley*, 304 B.R. at 339 (citing *Roswick*, 231 B.R. at 860; *Price v. Harris (In re Harris)*, 155 B.R. 948 (Bankr. E.D. Va. 1993); *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 807 (Bankr. D. Mass. 1987)). With the avoidance of the lien claimed by Gordon and Mary Fredenberg, the property is not subject to any liens, therefore a sale would unquestionably provide a direct benefit to the Debtor's unsecured creditors.

On the other side, concerning whether a sale of the Residence would provide a larger benefit to the estate than a detriment to Ted Fredenberg, he has not shown that he will suffer any detriment by a sale of the property. More importantly, the Debtor and Ted Fredenberg, by way of the Marital Dissolution Agreement incorporated into the Final Decree, agreed to a sale of the Residence following their divorce, with any proceeds following satisfaction of the Security Note to be divided equally between them. In the event of a sale by the Plaintiff, Ted Fredenberg will still receive, pursuant to 11 U.S.C. § 363(j), his one-half of the proceeds, less costs and expenses of the sale, just as the bankruptcy estate will receive the remaining proceeds attributable to the Debtor's one-half

interest.[6] Because there is no detriment to Ted Fredenberg by the sale of the Residence, each of the requirements of § 363(h) have been satisfied, and the Plaintiff shall be authorized to sell the Residence, from which, the proceeds, following payment of costs and expenses of the sale, shall be evenly divided between the Debtor's bankruptcy estate and Ted Fredenberg.[7]

## IV

In summary, the court will award a judgment to the Plaintiff avoiding the lien in the amount of $78,645.26 asserted by Gordon and Mary Fredenberg against the Debtor's interest in the Residence.  The court additionally will authorize the Plaintiff to sell, pursuant to 11 U.S.C. § 363(h), the interests of both the Debtor and Ted Fredenberg in the 8017 Lett Road, Corryton, Tennessee residence.

A judgment consistent with this Memorandum will be entered.

FILED:  January 5, 2010

                              BY THE COURT

                              */s/ RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE

---

[6] Ted Fredenberg is also afforded a statutory right of first refusal, wherein he may "purchase [the Residence] at the price at which such sale is to be consummated."  11 U.S.C. § 363(i).

[7] Because he is afforded statutory assurance of payment of his one-half of the proceeds, the court finds that he is adequately protected, and the Defendants' request in their Answer & Counterclaim for adequate protection pursuant to 11 U.S.C. § 363(e) is unnecessary.  The Counterclaim will accordingly be dismissed.

13